UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DAVID COATS and TAMMY COATS )
)
v. ) No. 3:10-0759
) JUDGE CAMPBELL
NASHVILLE LIMO BUS, LLC; JAN )
MILES; HOWARD PULLEY; and TRACY )
MCMURTRY )

MEMORANDUM

I. Introduction

David Coats and his spouse, Tammy Coats ("Plaintiffs"), filed suit against Nashville

Limo Bus, LLC, Jan Miles, Howard Pulley and Tracy McMurtry alleging a collective class

action claim for violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3)

(Counts I & IV); a claim for violation of the Tennessee Whistleblower Act, Tenn. Code Ann. §

50-1-304(b) (Count II); and a claim for common law retaliatory discharge (Count III).  The

individual Defendants filed a Motion To Dismiss Or, In The Alternative, For Judgment On The

Pleadings (Docket No. 13), to which Plaintiffs filed a response in opposition (Docket No. 19),

and the Defendants filed a reply (Docket No. 22).

II. Factual Background

The facts are taken from the Complaint and are assumed to be true for purposes of the

motion to dismiss.  Plaintiffs are residents of Lebanon, Tennessee.  Nashville Limo Bus, LLC

("Nashville Limo") is a Tennessee limited liability company with its principal office located in

Nashville, Tennessee.  Miles, Pulley and McMurtry are Tennessee residents.  (Docket No. 1,

Complaint ¶¶ 1-5.)

1

Nashville Limo is engaged in the business of transporting automobiles for car dealerships and automobile wholesalers. Nashville Limo formerly employed the Plaintiffs as drivers. (Id. ¶¶ 8, 10.)

Miles, Pulley and McMurtry are co-owners of Nashville Limo. McMurtry owns a fifty percent (50%) interest in the company, while Miles and Pulley each own a twenty-five percent (25%) interest.[1] All three individuals conduct the business of Nashville Limo at the company's principal Nashville office. (Id. ¶ 9.)

Nashville Limo treats its drivers as independent contractors rather than employees. Drivers receive 1099 tax forms and are not paid by the hour. Nashville Limo does not withhold FICA taxes and drivers are required to pay the full amount of FICA tax. (Id. ¶¶ 11-13.)

Plaintiffs allege that they and other drivers are employees because Nashville Limo controls schedules, work locations and the manner of completing work; supplies drivers with the tools and equipment needed to complete their jobs; and maintains the right to terminate drivers. Plaintiffs and other drivers worked up to forty (40) hours or more per week. (Id. ¶¶ 14-15.)

In 2009, David Coats submitted an SS-8 form to the Internal Revenue Service ("IRS") to obtain a determination whether he was properly classified as an independent contractor. The IRS determined that Coats was an employee and therefore, Nashville Limo should pay half of his FICA tax. On information and belief, Nashville Limo was notified of this determination. (Id. ¶¶ 16-17.)

In November 2009, Miles asked David Coats if he had any tax problems. During the conversation, Coats told Miles that he had submitted an SS-8 form to the IRS and that the IRS

_____

[1]Defendants deny that Miles and Pulley have an ownership interest in Nashville Limo, but they agree that Plaintiffs' allegations must be taken as true on the motion to dismiss. (Docket No. 14, Memorandum of Law at 1 n.1.)

determined Nashville Limo's drivers were employees and not independent contractors. Miles informed Coats that "they would shut the business down before Nashville Limo would pay their employees by the hour." Coats stated he did not want to see people lose their jobs and asked if he was going to get fired for seeking an IRS determination about whether he was an employee. Miles told Coats that he would not be fired or let go. (Id. ¶¶ 18-21.)

The next day, on or about November 17, 2009, Pulley telephoned David Coats to tell him that he was not needed for work that day. Later that week, Coats called Nashville Limo about his schedule and was again informed that he was not needed to work. Nashville Limo did not call Coats to return to work after Coats revealed that he sought an IRS determination about his status. Tammy Coats continued to work for Nashville Limo as a driver until February 2010. (Id. ¶¶ 22-24.)

Due to the circumstances surrounding the termination of David Coats' employment, the Plaintiffs consulted with an attorney. On information and belief, the managers of Nashville Limo learned that Plaintiffs were considering legal action. Tammy Coats tried to contact Pulley and McMurtry directly to obtain further job assignments, but their failure to respond to her requests for work assignments after April 8, 2010, constituted a constructive discharge. (Id. ¶¶ 25-26.)

Plaintiffs allege that they, and all similarly-situated individuals who subsequently file consent forms to become party plaintiffs, are "employees" within the meaning of 29 U.S.C. § 203(e). (Id. ¶ 28.) Plaintiffs also allege in the singular form that "Defendant was and/or is the 'employer' of the named Plaintiffs . . . as defined by 29 U.S.C. § 203(b)." (Id. ¶ 29.) This allegation appears to refer only to Nashville Limo. Plaintiffs further allege that "Defendant has engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to designate their drivers, such as the Plaintiffs . . . as employees rather than independent

contractors[.]" (Id. ¶ 30.)  It is not clear from the words "Defendant" and "their" whether Plaintiffs refer only to Nashville Limo or to all Defendants.

Plaintiffs allege that "Defendant" routinely withheld information from the Plaintiffs about their right to have "half of the FICA tax paid by Defendant employer and their right to certain wages and earned overtime[,]" and that Plaintiffs relied on the misrepresentations made by "Defendant." (Id. ¶ 31.)  Finally, Plaintiffs allege that "Defendant's" failure to compensate Plaintiffs in a proper manner constitutes a willful violation of the FLSA.  (Id. ¶ 32.)  These allegations, all written in the singular, appear to refer only to Nashville Limo.

In the substantive FLSA cause of action (Count I), Plaintiffs allege that "Defendants" violated 29 U.S.C. § 215(a)(3) by discharging them for filing a complaint with the IRS about FICA taxes and by failing to pay them appropriate wages and overtime.  (Id. ¶ 33.)  Plaintiffs further allege that Miles, Pulley and McMurtry violated the FLSA and are liable to Plaintiffs "because they sufficiently controlled the corporate operations with respect to the Plaintiffs[,]" and because they "were directly involved in both the failure to pay the Plaintiffs their correct wages and earned overtime and in the retaliatory discharge of both Plaintiffs." (Id. ¶ 34.)  In the state-law causes of action under the Tennessee Whistleblower Act and for common law retaliatory discharge, Plaintiffs allege only that Nashville Limo is liable to them.[2]  (Id. ¶¶ 44, 50.)

Miles, Pulley and McMurtry seek dismissal from the FLSA claim under Federal Rule of Civil Procedure 12(b)(6) or, alternatively, under Rule 12(c), on the ground that Plaintiffs failed to provide any factual basis for imposing FLSA liability on them.  The individual Defendants

---

[2]While the individual Defendants appear to seek dismissal on all counts, (Docket No. 14, Memorandum of Law at 3), the Complaint does not even name the individual Defendants in Counts II and III.  Therefore, the motion to dismiss the individual Defendants from Counts II and III is moot, and the Court focuses only on Counts I and IV, which pertain to the FLSA collective action.

rely on state corporate law to suggest that Plaintiffs failed to establish any factual basis to pierce the corporate veil to hold them individually liable. Plaintiffs respond that, in the FLSA context, they are not required to satisfy state-law requirements for piercing the corporate veil in order to hold the individual Defendants liable.

### III. Analysis

A. The Applicable Standards

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court must accept the allegations of the Complaint as true and construe the alleged facts in the Plaintiffs' favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, — U.S. —, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Factual allegations must be sufficient to raise the right to relief above the speculative level. Twombly, 550 U.S. at 555. Bare assertions amounting to nothing more than a formulaic recitation of the elements of a constitutional claim cannot suffice. Iqbal, 129 S.Ct. at 1951.

Under Rule 12(c), all well-pleaded material allegations of the Complaint must be taken as true, Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group, 463 F.3d 478, 487 (6th Cir. 2006), but the Court need not accept as true legal conclusions or unwarranted factual inferences. JPMorgan Chase Bank, N.A. v. Winget, 510 F.3d 577, 581-582 (6th Cir. 2007). When Rule 12(c) is used in its customary fashion to dispose of the case on the underlying substantive merits, the appropriate standard is that applicable to summary judgment, except that the Court may consider only the content of the pleadings and the documents referenced in the complaint that are central to an

understanding of the factual claims. <u>Alexander v. City of Chicago</u>, 994 F.2d 333, 336 (7th Cir. 1993); <u>Weiner v. Klais and Co.</u>, 108 F.3d 86, 89 (6th Cir. 1997). Thus, a Rule 12(c) motion may be "'granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." <u>JPMorgan Chase Bank, N.A.</u>, 510 F.3d at 582 (quoting <u>Paskvan v. City of Cleveland Civil Serv. Comm'n</u>, 946 F.2d 1233, 1235 (6th Cir. 1991)).

B. <u>The Motion To Dismiss</u>

The FLSA defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d). The FLSA recognizes there may be several simultaneous employers who may be responsible for FLSA compliance. <u>Dole v. Elliott Travel & Tours, Inc.</u>, 942 F.2d 962, 965 (6th Cir. 1991) (citing <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973)). Because the FLSA is a remedial statute, the Court is required to define "employer" more broadly than the term would be interpreted in traditional common law applications. <u>Id.</u> "In deciding whether a party is an employer, 'economic reality' controls rather than common law precepts of agency[,]" and whether a party is an employer within the meaning of the FLSA is a legal determination. <u>Id.</u>

The Sixth Circuit has said that the "'overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" <u>Id.</u> (quoting <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1511 (1st Cir. 1983)). In <u>Agnew</u>, 712 F.2d at 1514, the First Circuit determined that corporate officers who have a significant ownership interest and operational control of significant aspects of a corporation's day-to-day functions, including compensation of employees, qualify as "employers" under the FLSA. No one factor is dispositive; rather, the Court must "transcend traditional concepts of the employer-employee

relationship and assess the economic realities presented by the facts of each case." Dole, 942 F.2d at 965 (quoted case omitted).

In Dole, 942 F.2d at 966, the Sixth Circuit determined that an individual defendant qualified as an "employer" under the FLSA where he had a significant ownership interest in the corporation, he served as President of the corporation, and he had control over significant aspects of the day-to-day business and financial operations of the corporation. The court noted that, to be classified as an employer, an individual need not have exclusive control of a company's day-to-day functions; it is enough if the individual has operational control over significant aspects of the company's daily operations. Id. Similarly, in Fegley v. Higgins, 19 F.3d 1126, 1131 (6th Cir. 1994), the Sixth Circuit determined that an individual defendant should be held liable under the FLSA because he had a significant ownership interest in the company and he served as chief executive officer, controlling significant aspects of the business, including setting salaries and making hiring decisions.

The Court concludes under these cases that the individual Defendants named in the Complaint–Miles, Pulley and McMurtry–are not entitled to dismissal simply because they are individuals. The question is whether Plaintiffs have alleged sufficient facts in the Complaint to satisfy the requirements of Dole and Higgins. This is a close question.

The Court accepts as true that each individual Defendant holds a significant ownership interest in, and participates in the management of, Nashville Limo. The Court also concludes that specific facts are provided to allow the Court to draw the reasonable inference that Miles, Pulley and McMurtry all participate in significant aspects of the company's day-to-day operations. Miles asked David Coats if he had any "tax problems" and, after learning that Coats sought an IRS determination about his employee status, Miles told Coats that "they" (presumably Miles, Pulley and McMurtry) would shut down the business before "they" paid

employees by the hour.  The Court believes that Miles' use of the word "they" included McMurtry because the business could not be shut down without the approval of the 50 percent owner.  Miles also assured Coats that he would not be fired for seeking the IRS determination; yet, despite that assurance, the next day Pulley called Coats to tell him he was not needed at work and thereafter, Nashville Limo did not give Coats any more job assignments.  Tammy Coats continued to work for Nashville Limo for a period of time, but when the Defendants learned that the Plaintiffs might take legal action, Tammy Coats' job assignments evaporated, too.  When Tammy Coats tried in April 2010 to contact Pulley and McMurtry about her job assignments, she did not receive any response to her contacts, resulting in her constructive discharge.

While the factual support offered in the Complaint for individual liability under the FLSA is slim, the Court concludes that Plaintiffs include sufficient facts to state a plausible claim for relief so that they may proceed to discovery, where the issue of individual liability will be examined in greater detail.  In the event the evidence ultimately does not support a finding of individual liability against Miles, Pulley or McMurtry, the issue may be renewed in a dispositive motion filed at the appropriate time in accordance with the governing Case Management Order.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the individual Defendants' Motion To Dismiss Or, In The Alternative, For Judgment On The Pleadings (Docket No. 13), will be denied.

Todd Campbell
_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE
